UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| John Rogne, | No. 24-cv-2612 (KMM/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Digital Forensics Corp., | |
| Defendant. | |

Plaintiff John Rogne alleges that Defendant, Digital Forensics Corp. ("DFC"),[1] violated the bankruptcy discharge injunction under 11 U.S.C. § 524 and the automatic stay of the Bankruptcy Code, 11 U.S.C. § 362, and engaged in the common law tort of invasion of privacy. DFC seeks to compel Mr. Rogne to pursue these claims through arbitration. For the reasons that follow, DFC's motion to compel arbitration is denied.

## BACKGROUND

In his Complaint, Mr. Rogne alleges that in 2023, he incurred a debt with DFC for "digital data recovery services." More specifically, on July 20, 2023, Mr. Rogne entered into an agreement with DFC known as the "Phase I Service Authorization Payment Plan Agreement & Acknowledgment" ("Phase 1 Agreement"). Tanabe Decl., Ex. A (Doc. 12). On July 31, 2023, Rogne entered into a second agreement with DFC known as the "Phase

---

[1] DFC is the "doing business as" designation for 1st All File Recovery USA Inc.

1

2 Authorization Agreement to Commence Work Before Payment Received" ("Phase 2 Agreement"). *Id.*, Ex. B.

In the Phase 1 Agreement, Mr. Rogne retained DFC's services to assist him in "combatting extortion and blackmail involving invasion of privacy. . . ." Mr. Rogne agreed to make a down payment and to pay the full $1,566.88 cost of those services, along with 12 percent interest, over 16 monthly installments. Mr. Rogne represented that at the time of entering the Phase 1 Agreement he was "over the age of 18, of sound mind and memory, not impaired, under duress, or under any influence, and able to legally enter into a contract with the capacity and authority to bind [himself] … to th[e] agreement including all [of its] provisions." He also acknowledged that he had a "reasonable opportunity to obtain or has obtained independent legal advice with respect to this agreement and that [he] has read and fully understands the provisions of this agreement."

The Phase 1 Agreement includes a provision entitled "Complaint Resolution Process," which required Mr. Rogne to first communicate any issue with customer service. If that proved unsuccessful in resolving the issue, DFC's president would review the complaint and address the issue. If the matter was still unresolved, then Mr. Rogne and DFC were required to participate in mediation. And finally, if mediation is unsuccessful, the contract provides that "the dispute shall be submitted to binding arbitration pursuant to the commercial rules set by the American Arbitration Association [AAA]." The contract allows DFC to bypass these complaint resolution procedures and bring an action in court to collect unpaid fees or to pursue defamation claims against Mr. Rogne. The Phase 1 Agreement also includes an Ohio forum selection clause and a choice-of-law provision

stating that Ohio law governs the agreement as well as any claim that might arise between Mr. Rogne and DFC.[2]

Eventually, Mr. Rogne fell behind on making payments due to unexpected financial pressures. Because of his financial difficulties, he filed a Chapter 7 bankruptcy case on January 31, 2024. DFC was included in the bankruptcy as one of Mr. Rogne's creditors. DFC received notice of Mr. Rogne's bankruptcy on February 5, 2024.

Despite being notified of the bankruptcy proceeding and the fact that 11 U.S.C. § 362 creates an automatic stay, DFC called Mr. Rogne to collect on the debt multiple times between February and June 2024. Mr. Rogne's bankruptcy attorney contacted DFC and sent notice of the bankruptcy on March 20, 2024 regarding these collection efforts. However, DFC continued to call Mr. Rogne and his bankruptcy attorney sent DFC another notice on May 23, 2024. These collection efforts allegedly violated the automatic stay under § 362.

On May 8, 2024, the bankruptcy court discharged his Chapter 7 proceeding, and DFC received notice of the discharge order from the bankruptcy court on May 10, 2024. Although DFC had notice of the bankruptcy discharge, DFC continued collection efforts by calling Mr. Rogne multiple times throughout May and June 2024. DFC also sent Mr. Rogne a collection notice on June 5, 2024. Mr. Rogne responded to DFC by email that day, providing DFC direct notice of the bankruptcy. Nevertheless, DFC sent another

---

[2] Mr. Rogne entered into the Phase 2 Agreement, purchasing a month of continued support and monitoring services from DFC related to continued extortion attempts. The Phase 2 Agreement contains the same "Complaint Resolution Process," forum-selection, and choice-of-law provisions that are in the Phase 1 Agreement.

collection email to Rogne on June 19, 2024, threatening to take legal action if Rogne did not make a payment on the discharged debt. These actions allegedly violated the bankruptcy discharge injunction under 11 U.S.C. § 524.

## DISCUSSION

DFC argues that the Court should compel the parties to arbitrate the claims in Mr. Rogne's complaint because the parties agreed to arbitrate every dispute between them according to the AAA commercial rules, the claims in Mr. Rogne's complaint fall within this broad arbitration clause, and the parties delegated the issue of arbitrability to the arbitrator. Mr. Rogne argues that the arbitration provision is unenforceable because (1) the conclusion of his bankruptcy proceedings resulted in a discharge of his debt to DFC and there was no reaffirmation of the Phase 1 and Phase 2 Agreements containing the arbitration provision; (2) a conflict between the Federal Arbitration Act and the Bankruptcy Code prevents enforcement of the arbitration clause; and (3) the contracts are unconscionable contracts of adhesion. Because the Court finds that the bankruptcy discharge rendered the arbitration agreement unenforceable, DFC's motion to compel arbitration is denied, and the Court does not reach Mr. Rogne's alternative arguments.

**I.      Legal Standard**

Federal law has a general policy favoring arbitration. *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019). However, arbitration is fundamentally a matter of contract law, and parties cannot be forced to arbitrate "unless they have contractually agreed to be bound by arbitration." *Id.* When determining whether to compel arbitration, courts consider: (1) whether the parties agreed to arbitrate, and if so, (2) whether the dispute

is within the scope of the agreement. *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). As the party seeking to compel arbitration, DFC has the burden to prove that a "valid and enforceable agreement" to arbitrate exists. *Shockley*, 929 F.3d at 1017. In assessing whether the parties formed a valid agreement to arbitrate, a court "should apply ordinary state-law principles that govern the formation of contracts." *Ballou v. Asset Mktg. Servs., LLC*, 46 F.4th 844, 851 (8th Cir. 2022) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

## II.   Bankruptcy Discharge and Arbitration

A Chapter 7 bankruptcy "allows debtors to get a 'fresh start' by discharging their debts." *Bartenwerfer v. Buckley*, 598 U.S. 69, 73 (2023); *In re Miller*, 276 F.3d 424, 429 (8th Cir. 2002) ("We are mindful of our duty to construe exceptions to discharge narrowly in order to effect the fresh start policy of the Bankruptcy Code.").[3] "Pursuant to 11 U.S.C. § 727(b), a discharge in a Chapter 7 case discharges the debtor from all debts that arose before the date of filing of the bankruptcy petition, except those that are excepted from discharge." *In re Everly*, 346 B.R. 791, 794 (B.A.P. 8th Cir. 2006). "The discharge injunction 'operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover, or offset any such debt as

---

[3] The filing of a bankruptcy petition also operates as a stay of any act by a creditor "to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a). This stay is one of the "fundamental debtor protections" offered by bankruptcy law and gives the debtor a "breathing spell" from being pressured by creditors that drove the debtor to bankruptcy. *In re Hartung*, 258 B.R. 210, 213 (Bankr. D. Mont. 2000). And the automatic stay ensures that the debtor's assets are distributed in an orderly manner such that one creditor may not jump ahead of others to receive a larger distribution. *In re Schake*, 154 B.R. 270, 273 (Bankr. D. Neb. 1993).

a personal liability of the debtor whether or not discharge of such a debt is waived. . . ." *Id.* at 795 (quoting 11 U.S.C. § 524(a)(2)). This injunction "ensure[s] that once a debt is discharged, the debtor will not be pressured in any way to repay it." *Id.*

A Chapter 7 bankruptcy discharge eliminates "a claim to payment." *Jernstad v. Green Tree Servicing, LLC*, No. 11 C 7974, 2012 WL 8169889, at * 2 (N.D. Ill. Aug. 2, 2012) (quoting *Bethea v. Robert J. Adams & Assocs.*, 352 F.3d 1125, 1128 (7th Cir. 2003)). "A reaffirmation agreement is the only vehicle through which a dischargeable debt can survive a Chapter 7 discharge." *In re Turner*, 156 F.3d 713, 718 (7th Cir. 1998).

Several courts have held that, absent a reaffirmation agreement between the debtor and the creditor, an arbitration agreement embedded in a contract terminated by a bankruptcy discharge is unenforceable. *Jernstad*, 2012 WL 8169889, at *2; *see also In re Harrier*, 903 F. Supp. 2d 1281, 1284 (M.D. Fla. 2012); *In re Jorge*, 568 B.R. 25, 30–31 (N.D. Ohio 2017); *Green Tree Servicing, LLC v. Fisher*, 162 P.3d 944, 947–48 (Okla. Ct. App. 2007). In part, these cases recognize that where a debtor's post-discharge claims do not seek to use the parties' contract as a weapon while attempting to avoid the effect of an embedded arbitration agreement, the debtor cannot be compelled to arbitrate claims that the creditor unlawfully attempted to collect on a discharged debt. *E.g.*, *Harrier*, 903 F. Supp. 2d at 1284 ("Importantly, Harrier is not using the agreement as a 'weapon' in this case.").

This case is no different. Mr. Rogne agreed to pay DFC in consideration of its blackmail and extortion protection services and to arbitrate disputes arising out of the parties' contracts, but the bankruptcy discharge terminated Mr. Rogne's obligations under

6

the contracts by eliminating his debt to DFC. He does not now seek to use that agreement as a weapon to obtain anything from DFC while simultaneously trying to avoid the effect of an arbitration clause. Instead, he seeks compensation based on DFC's allegedly unlawful attempts to collect on a debt after it was discharged. After the discharge, Mr. Rogne could not have sued DFC for breach of contract claiming that DFC failed to provide the services DFC promised because the agreement was void, and DFC was under no obligation to continue providing services to Mr. Rogne. There is no evidence that Rogne and DFC entered a reaffirmation agreement. Under these circumstances, the Court finds that Rogne's bankruptcy discharge renders the arbitration agreement unenforceable and DFC's motion to compel arbitration is, therefore, denied.[4]

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT** Defendant's motion to compel arbitration (Doc. 9) is **DENIED**.

Date: January 13, 2025        *s/Katherine Menendez*
                              Katherine Menendez
                              United States District Judge

---

[4] True, other courts have found that a bankruptcy discharge does not render an arbitration agreement unenforceable, but most have done so in other contexts, where the debtor's claims did not arise out of the creditor's attempts to collect on a discharged debt. *See, e.g.*, *Mann v. Equifax Info. Servs., LLC*, No. 12-cv-14097, 2013 WL 3814257, at *8–9 (E.D. Mich. July 22, 2013) (noting that the parties' arbitration agreement was "only in play because of [the plaintiff's] FCRA claim, not because [the defendant] is attempting to collect a debt that has been discharged"); *Gadomski v. Wells Fargo Bank N.A.*, 281 F. Supp. 3d 1015 (E.D. Cal. 2018) (relying on *Mann* and distinguishing between claims that arise "from the [defendant's] attempt to collect on a discharged debt" and "claims brought under the FCRA and state law"); *see also Chavez v. Get It Now, LLC*, No. 17-cv-1490 (DWF/HB), 2018 WL 461130, at *2 (D. Minn. Jan. 16, 2018) (concluding that a bankruptcy discharge "extinguishes the debtor's obligation to pay, but the other contractual provisions remain enforceable"). This line of authority is distinguishable from the case before the Court.

7